**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Valli Jo WILLIAMS, Respondent.**

No. 03–1702.

Supreme Court of Iowa.

Feb. 25, 2004.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Valli Jo Williams, Rockford, Illinois, pro se.

WIGGINS, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct (Board) brought a complaint against attorney Valli Jo Williams after she pled guilty to interstate transportation of stolen property and wire fraud. The complaint charged Williams with multiple violations of the Iowa Code of Professional Responsibility.

After a hearing, the Iowa Supreme Court Grievance Commission recommends we revoke Williams' license to practice law in Iowa. We agree with the Commission's recommendation and revoke Williams' license to practice law in Iowa.

## I. Procedural Background.

On June 6, 2002, this court suspended Williams' license to practice law upon receipt of satisfactory evidence Williams entered a guilty plea to interstate transportation of stolen property and wire fraud in the United States District Court for the Northern District of Iowa. On July 2, 2003, the Board filed its notice of complaint and its requests for admissions directed to Williams. Williams did not file an answer to the complaint or respond to these requests for admissions. The Board filed an additional request for admission on August 15, 2003. Williams responded and admitted the additional request for admission. After receiving notice of the hearing, Williams sent a letter to the Grievance Commission informing the Commission she would be unavailable for the hearing and the Commission should hold the hearing without her attendance.

On September 22, 2003, the Grievance Commission held its hearing. Williams did not appear personally or through an attorney. On October 21, 2003, the Grievance Commission filed its report recommending revocation of Williams' license to practice law in Iowa.

## II. Scope of Review.

 Williams does not appeal from the Grievance Commission's recommendation. Nevertheless, our review of the record made before the Commission is de novo. The court will "decide the matter, taking into consideration the factual findings and disciplinary recommendation made by the Commission." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell,* 650 N.W.2d 648, 650 (Iowa 2002). The Commission has the burden of proof to show ethical violations by a "convincing preponderance of the evidence." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman,* 619 N.W.2d 407, 409 (Iowa 2000).

## III. Factual Findings.

We consider the allegations of the complaint as admitted, because Williams did not file an answer to the Board's complaint. Iowa Ct. R. 36.7 (2003). We also deem the first set of requests for admissions as admitted, because Williams failed to file a response to these requests. Iowa R. Civ. P. 1.510(2); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Postma,* 555 N.W.2d 680, 681 (Iowa 1996). We find the facts to be as follows.

CRST International (CRST), located in Cedar Rapids, Iowa, employed Valli Jo Williams. CRST is the parent company of several trucking companies. Williams was the head of CRST's claims department and oversaw litigation, which arose from accidents involving CRST's vehicles. As part of Williams' job responsibilities, she had the authority to settle and did settle accident claims against CRST.

Williams devised a scheme to defraud CRST by submitting fictitious accident claims to her employer. Once CRST issued and delivered the checks to Williams, she deposited the checks into a Rockford, Illinois, bank account under the name of "Ritchason & Associates." She would then transfer the money from that account into her personal Iowa bank accounts. In all, she defrauded CRST out of $692,540.22 between September 1993 and March 1997.

In November of 1998, Williams began working for CNA Insurance in its Overland Park, Kansas, office. Williams

worked as a liability claims consultant. As part of her job, she initiated the electronic process to pay insurance claims. From February 4, 1999, and continuing to March 23, 2000, Williams authorized the payment of insurance claims electronically, causing CNA to issue fifteen checks totaling $386,713.78 jointly payable to a fictitious claimant and one of the several aliases used by Williams. Williams authorized CNA to deliver these checks to her aunt's residence in Wisconsin or to a mail drop facility controlled by Williams in Rockford, Illinois. None of the checks issued were for actual insurance claims.

For her criminal actions while working for CRST, the government indicted Williams on twelve counts of interstate transportation of stolen property in the United States District Court for the Northern District of Iowa. For Williams' criminal actions while working for CNA Insurance, the government brought a fifteen-count indictment of wire fraud against Williams in the United States District Court for the District of Kansas. The federal court in Iowa handled all the charges as part of a plea agreement. Pursuant to the plea agreement, Williams pled guilty to one count of interstate transportation of stolen property and one count of wire fraud. The court dismissed the remaining charges under the plea agreement. On March 28, 2002, the court sentenced Williams to two thirty-month terms of imprisonment, to be served concurrently and ordered her to pay restitution of $1,062,339.68. Upon release from incarceration, Williams was to be placed on supervised release for three years.

### III. Ethical Violations.

■ Williams' wire fraud and interstate transportation of stolen property, which resulted in her felony convictions, violated (1) DR 1–102(A)(1) (providing "[a] lawyer shall not ... violate a disciplinary rule"); (2) DR 1–102(A)(3) (providing "[a] lawyer shall not ... engage in illegal conduct involving moral turpitude"); (3) DR 1–102(A)(4) (providing "[a] lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation"); and (4) DR 1–102(A)(6) (providing "[a] lawyer shall not ... engage in any other conduct that adversely reflects on the fitness to practice law"). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Vinyard,* 656 N.W.2d 127, 130 (Iowa 2003) (holding attorney's conduct, which led to felony convictions for money laundering and wire fraud, violated DR 1–102(A)(1), DR 1–102(A)(3), DR 1–102(A)(4), and DR 1–102(A)(6)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lyzenga,* 619 N.W.2d 327, 330 (Iowa 2000) (holding attorney's conduct, which led to criminal convictions for theft, forgery and deceptive practices, violated DR 1–102(A)(4) and DR 1–102(A)(6)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Morris,* 604 N.W.2d 653, 655 (Iowa 2000) (holding attorney's conduct, which led to criminal conviction for fraudulent practices, violated DR 1–102(A)(3), DR 1–102(A)(4), and DR 1–102(A)(6)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Palmer,* 563 N.W.2d 634, 635 (Iowa 1997) (holding attorney's conduct, which led to felony conviction involving theft and unauthorized use of a credit card, violated DR 1–102(A)(3) and DR 1–102(A)(4)).

### IV. Sanctions.

■ When determining the proper sanction, the court considers the nature of the alleged violations, the fitness of the attorney to continue to practice law, the need to protect the public from persons unfit to practice law, the need to uphold the public's confidence in the integrity of our system of justice, the need to deter other attorneys from committing similar miscon-

duct, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen,* 670 N.W.2d 161, 164 (Iowa 2003). Conviction of a felony is sufficient cause for revocation or suspension of an attorney's license. Iowa Code § 602.10122(1) (2003). Williams' felony convictions are conclusive evidence of her misconduct. *Id.*

■ This court has previously stated: "There is no place in our profession for lawyers who convert funds entrusted to them. It is almost axiomatic that we revoke licenses of lawyers who do so." *Comm. on Prof'l Ethics & Conduct v. Ottesen,* 525 N.W.2d 865, 866 (Iowa 1994). Normally, this court will revoke an attorney's license for converting client funds. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Allen,* 586 N.W.2d 383, 389–90 (Iowa 1998) (listing cases where this court revoked an attorney's license to practice law for converting client funds and cases where we found suspension was the more appropriate sanction).

Since *Allen,* we have revoked the license of four attorneys for similar conduct. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman,* 674 N.W.2d 129, 139 (Iowa 2004) (revoking the license of an attorney for converting clients' funds for his own use); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 145 (Iowa 2004) (revoking the license of an attorney for theft of clients' funds); *Vinyard,* 656 N.W.2d at 132 (revoking an attorney's license after he was found guilty of fourteen counts of mail fraud and twelve counts of money laundering); *Bell,* 650 N.W.2d at 655 (revoking an attorney's license after the attorney, treasurer of the Iowa Intellectual Property Law Association, withdrew $11,000 from the association's account for his own private use).

The only mitigating factor in Williams' favor is that this is her first disciplinary proceeding. The serious nature of the aggravating factors outweighs this mitigating factor. *Vinyard,* 656 N.W.2d at 131; *Bell,* 650 N.W.2d at 655. Williams defrauded two separate employers in excess of $1,000,000. In both employment situations, she took advantage of positions of trust to misappropriate funds for her personal use. Her criminal actions took place over a seven-year period. Her actions were not an isolated instance of misconduct, but a carefully planned scheme involving wire fraud and interstate transportation of stolen property. In light of the grave criminal actions for which Williams pled guilty and served time in federal prison, it is axiomatic that her license to practice law in Iowa be revoked. We assess the costs to Williams as provided in Iowa Court Rule 35.25(1).

**LICENSE REVOKED.**