**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Dale S. HONKEN, Respondent.**

**No. 04–1174.**

Supreme Court of Iowa.

Nov. 10, 2004.

Charles L. Harrington and Mark J. Schouten, Des Moines, for complainant.

Dale S. Honken, Sibley, respondent, pro se.

WIGGINS, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct (Board) filed a complaint alleging Dale S. Honken had violated numerous rules of the Iowa Code of Professional Responsibility in his handling of six different legal matters. The Grievance Commission (Commission) found the Board had proven the alleged violations and recommends we suspend Honken's license to practice law for six months. We agree with the Commission that the Board proved Honken's conduct violated numerous rules of the Iowa Code of Professional Responsibility but conclude the nature of his conduct calls for a longer suspension. We therefore suspend Honken's license to practice law in this state indefinitely with no possibility of reinstatement for two years.

## I. Personal Background and Proceedings.

Honken graduated from the University of Iowa College of Law in 1987. Upon graduation, he worked for a law firm in Sioux City. In 1990, he moved to Sibley to work at another law firm, eventually becoming a partner. After working at the firm for about eight years, the firm asked him to resign after his work product began to diminish. On January 1, 1999, Honken started a solo practice in Sibley.

On January 28, 2004, the Board filed its complaint and personally served Honken. Honken never filed an answer to this complaint. On April 9, the Board filed its first amended and substituted complaint. On May 17, Honken accepted service of the amended and substituted complaint, filed a stipulation admitting the allegations of the amended and substituted complaint, and requested the matter proceed to hearing on the issue of the appropriate sanction.

On May 18, the Commission held its hearing on the issue of the appropriate sanction. Honken appeared personally at the hearing. On July 27, the Commission filed its findings of fact, conclusions of law and recommendations.

## II. Scope of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams,* 675 N.W.2d 530, 531 (Iowa 2004). The court will " 'decide the matter, taking into consideration the factual findings and disciplinary recommendation made by the Commission.' " *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell,* 650 N.W.2d 648, 650 (Iowa 2002)). The court will consider the discipline recommended by the Commission but is not bound by it. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 818 (Iowa 2001).

## III. Factual Findings and Ethical Violations.

Honken admitted all of the factual claims and ethical violations made against him by the Board. Accordingly, we find the facts and make a determination of Honken's ethical violations as follows.

**Matlock Matter.** In October 2001, Matlock Electric & Satellite, Inc. (Matlock) hired Honken to represent it after it was sued for indemnification for allegedly performing negligent electrical work on a project. Honken filed an answer on Matlock's behalf. On December 10, the plaintiff filed a motion for summary judgment. On the day the motion was set for hearing, Honken filed a resistance to the motion for summary judgment and moved to continue the hearing. The court continued the hearing until March 8, 2002, so Honken could conduct discovery to prepare a resistance. Honken, however, failed to conduct discovery, failed to file an additional resistance to the motion, and failed to appear at the hearing. As a result, the court entered judgment against Matlock in the sum of $151,088.19.

Honken did not inform Matlock of the entry of judgment against it. Instead, the majority shareholder found out about the judgment when a sheriff delivered a copy of the judgment to his home. When the shareholder met with Honken to discuss the judgment, Honken informed him nothing could be done about the judgment. Ultimately, Matlock was forced to file for bankruptcy.

Honken failed to cooperate with the Board's investigation into his ethical violations concerning the Matlock matter by failing to respond to the Board's notices of complaint. For Honken's actions in the Matlock matter, the Commission concluded and we agree Honken violated Iowa Code of Professional Responsibility DR 1–102(A)(1) (providing a lawyer should not violate a disciplinary rule); DR 1–102(A)(4) (providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(2) (providing a lawyer shall not handle a legal matter without preparation adequate in the circumstances); and DR 7–101(A)(3) (providing a lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship). The amended and substituted complaint also alleged a violation of DR 6–101(A)(3) (providing a lawyer shall not neglect a client's matter). The Commission did not make any finding regarding DR 6–101(A)(3). We, however, find his conduct violated DR 6–101(A)(3).

**Verdoorn Matter.** In December 1997, Honken undertook the representation of the Estate of Cornelius B. Verdoorn. Honken opened the estate. In May 1998, the clerk issued a delinquency notice for failure to file the inventory in the time prescribed by law. Honken cured this delinquency. When Honken presented the final report for the estate to the district court in September 1999, he stated he had applied for a certificate of acquittance for Iowa income tax; when in truth, the fiduciary tax return, which would trigger the issuance of the certificate of acquittance, had not been filed. The district court approved the final report. A few days later, the probate referee issued a report of probate, indicating Honken had not filed the acquittance. The referee faxed this report to Honken. In November 2000, the judge wrote to Honken requesting that he obtain and file the acquittance prior to December 1. When Honken had not filed the acquittance by that date, the clerk issued a notice of delinquency. On January 31, 2001, Honken applied for an order to extend the time for the final settlement of the estate. Paragraph three of the application stated:

The undersigned counsel has initiated contact with the Iowa Department of Revenue and Finance to ascertain why an Iowa Income Tax Certificate of Acquittance has not been provided. A representative of the Department of Revenue and Finance advised the un-

dersigned that a specialist in the Inheritance Tax division of the department should be responding to the inquiry by Friday, February 2, 2001.

On that same day, Honken spoke with the judge and informed him that he had already filed the tax return, and he anticipated hearing later the same week whether the estate owed any fiduciary tax. Suspicious of Honken, the judge contacted the Iowa Department of Revenue, and it informed the judge the tax return was not on file. The judge sent Honken a letter asking him why Honken told him the tax return had been filed with the department of revenue, when in fact it had not been filed, and why the tax return had still not been filed. Honken eventually filed the tax return, and the department of revenue issued an acquittance.

■ Honken refused to cooperate with the Board's investigation by not replying to the notices of complaint. The Commission concluded and we agree as a result of the above actions, Honken violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule); DR 1–102(A)(4) (providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (providing a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law); DR 6–101(A)(2) (providing a lawyer shall not handle a legal matter without preparation adequate in the circumstances); DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter); and DR 7–102(A)(5) (providing a lawyer shall not knowingly make a false statement of law or fact).

**Hinrichs Matter.** In March 1999, Honken undertook the representation of the Estate of Grace W. Hinrichs. He opened the estate. Included in the report and inventory filed with the district court was a parcel of farmland located in Nobles County, Minnesota. In July 1999, the estate sold the farmland at auction. The sale was to close on December 1. Honken told the Minnesota realtor who was handling the transaction and the executor of the estate that a Worthington, Minnesota, attorney was handling the closing on the land and any Minnesota estate proceedings. After the closing date passed, the realtor and executor separately contacted the Minnesota attorney. The Minnesota attorney informed them that Honken had not contacted him about any Minnesota land transaction. Honken finally contacted the Minnesota attorney for the first time in March 2000.

Also in regard to the administration of the estate, the executor repeatedly contacted Honken to request he pay those individuals who prepared for the sale of personal property belonging to the decedent. Honken failed to do so. Honken also failed to respond to a statement of adjustments to inheritance and estate tax issued by the department of revenue against the estate. The executor finally hired another attorney to represent the estate. Honken failed to turn over the estate files to the new attorney, even after a court order commanded him to do so. Eventually, Honken turned over the files but not until after the court-ordered deadline had passed.

■ Honken failed to cooperate with the Board's investigation by failing to respond to the notices of complaint. The Commission concluded and we agree Honken violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1) (providing a lawyer shall not vio-

late a disciplinary rule); DR 1–102(A)(4) (providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (providing a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law); DR 6–101(A)(2) (providing a lawyer shall not handle a legal matter without preparation adequate in the circumstances); DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter); and DR 7–102(A)(5) (providing a lawyer shall not knowingly make a false statement of law or fact).

**Bosma Matter.** In May 1999, Honken undertook the representation of the Estate of Frances Bosma. He opened the estate. On November 1, 1999, the clerk issued a delinquency notice when Honken failed to file the inventory within the time period prescribed by law. Honken cured this delinquency. On June 1, 2001, the clerk issued a second delinquency notice for failure to file an interlocutory report. Before Honken could file the report, the executors discharged him as attorney for the estate.

Prior to his discharge, Honken filed an application for allowance and payment of attorney fees in the sum of $6,625.16. The court approved the fees and ordered the estate to pay his fees in accordance with Iowa Supreme Court Probate Rule 2.[1] Sometime before the entry of this order, Honken's parents purchased a house from the estate. In exchange for a $2500 reduction in the purchase price of the house, Honken agreed to a $2500 reduction in his attorney fees. The reduction of the attorney fees was to be handled in two installments of $1250, with each half to be subtracted from the two payments of attorney fees as they were made. The executor paid the first half of the attorney fees in February 2000.

On the sale of the house, Honken represented both sides of the transaction—the buyer and seller. At no time did Honken advise the executors to seek independent counsel; nor did he inform them whether this arrangement was advisable for them.

After the estate discharged him as the attorney for the estate, Honken failed to turn over the files to the executors or return the $1250 advance he received on his attorney fees, as represented by the reduction in the purchase price of the estate property purchased by his parents. On August 24, 2001, the district court ordered Honken to turn over the original files to the law firm that was now handling the legal representation of the estate. Honken did not turn over the files in the time ordered by the court. The estate incurred additional attorney fees of $8,005.50.

■ Honken failed to cooperate in the Board's investigation by failing to reply to its notices of complaint. The Commission concluded and we agree Honken's conduct constituted multiple ethical violations of the Iowa Code of Professional Responsibil-

---

1. The applicable rule is now known as Iowa Rule of Probate Procedure 7.2(4), which provides:

 One half of the fees for ordinary services may be paid when the federal estate tax return, if required, and Iowa inheritance tax return, if required, are prepared. When an inheritance tax return is not required, an inheritance tax clearance must be filed. When a federal estate tax return is not required, the one-half fee may be paid when the Iowa inheritance tax return is prepared or, when it is not required, when the inheritance tax clearance is filed. The remainder of the fees may be paid when the final report is filed and the costs have been paid. The schedule for paying fees may be different when so provided by order of the court for good cause.

ity for Lawyers. He violated rules DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule); DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (providing a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law); DR 2–106(A) (providing a lawyer shall not enter into an agreement for, charge, or collect an illegal or excessive fee); DR 5–104(A) (providing a lawyer shall not enter into a business transaction with a client if they have differing interests, except with the consent of the client after full disclosure); DR 6–101(A)(2) (providing a lawyer shall not handle a legal matter without preparation adequate in the circumstances); DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter); DR 7–106(A) (providing a lawyer shall not disregard a ruling of a tribunal); and DR 9–102(B)(4) (providing a lawyer shall promptly pay or deliver to the client as requested by a client the property in possession of the lawyer which the client is entitled to receive). The Board also alleged Honken violated DR 7–101(A)(2) (providing a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services). The Commission made no finding as to this violation. We conclude Honken's conduct violated DR 7–101(A)(2).

**Davidson Matter.** The actions, or probably more correctly, the inaction, taken by Honken regarding this case is perhaps the most egregious matter involved in the disciplinary proceedings. On April 28, 2000, Steve and Linda Davidson, a retired couple in their fifties, were eating in a restaurant in Arnold's Park, Iowa, when a car driven by an elderly woman crashed through the wall of the restaurant, severely injuring the Davidsons. As a result of their injuries, they allegedly sustained over $100,000 in medical expenses.

The Davidsons hired Honken to represent them in a suit against the driver of the vehicle and others. Honken filed suit just before the statute of limitations expired. He failed, however, to obtain service over the driver of the vehicle. Additionally, he failed to respond to a motion to dismiss and failed to appear at a hearing on the motion. As a result, the court dismissed the lawsuit on March 17, 2003.

To make matters worse, Honken did not inform the Davidsons that the court dismissed their lawsuit. The Davidsons learned the court dismissed the lawsuit when they received a chiropractic bill with a copy of the order dismissing the case attached to it. Obviously upset, they called Honken at home, as it was a weekend. At Honken's request, the Davidsons faxed him a copy of the dismissal. That was the end of the communication because Honken refused to return their phone calls or answer their emails.

Eventually, the Davidsons obtained other legal counsel, who appealed the dismissal of their case. The court of appeals affirmed the dismissal and this court denied further review. The Davidsons were without a meaningful remedy because Honken did not carry malpractice insurance. The Davidsons fear their injuries will prevent them from obtaining affordable health insurance in the future.

■ Once again, Honken failed to cooperate in the Board's investigation by not responding to the notices of complaint. The Commission concluded and we agree Honken violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule); DR 1–102(A)(4) (providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (providing a lawyer shall not engage in

conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (providing a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law); DR 6–101(A)(2) (providing a lawyer shall not handle a legal matter without preparation adequate in the circumstances); DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter); and DR 7–101(A)(2) (providing a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services).

**Moet Matter.** Honken was hired to represent the Estate of Roger L. Moet. Honken opened the estate. On November 1, 2002, the court removed Honken as attorney for the estate and ordered him to provide the new attorney with a full and complete copy of his file in the estate within ten days of the order. Honken failed to turn over the contents of his file to the new attorney within ten days. On December 16, the court held Honken in contempt for failing to obey the court's order.

For this matter, the Commission concluded and we agree Honken violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule); DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (providing a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law); DR 7–106(A) (providing a lawyer shall not disregard a ruling of a tribunal); and DR 9–102(B)(4) (providing a lawyer shall promptly pay or deliver to the client as requested by a client the property in possession of the lawyer which the client is entitled to receive).

## IV. Sanctions.

In summary, Honken's conduct consisted of multiple acts of making misrepresentations to the court, disregarding court orders, neglecting client matters, misrepresenting the status of matters to his clients, and failing to respond to the Board's inquiries. The goal of the Code of Professional Responsibility is "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." *Committee on Prof'l Ethics & Conduct v. Gill*, 479 N.W.2d 303, 306 (Iowa 1991). When deciding on an appropriate sanction for an attorney's misconduct, we consider "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 338 (Iowa 2000). We also consider aggravating and mitigating circumstances present in the disciplinary action. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 655 (Iowa 2001).

The misrepresentations Honken made to the court "constitute[d] a grave and serious breach of professional ethics." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 576 (Iowa 1999). In several of the matters, Honken did not comply with court orders. "The violation of a court order by a lawyer constitutes misconduct." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht*, 656 N.W.2d 123, 125 (Iowa 2003). Honken also took an early probate fee payment before he had filed the Iowa inheritance tax return. His lack of respect for court orders and taking a fee in probate without prior court authorization are serious breaches of professional ethics. *See Iowa Supreme Ct. Bd. of Prof'l Ethics*

& *Conduct v. Reese,* 657 N.W.2d 457, 461 (Iowa 2003).

 Honken committed extreme professional neglect in his handling of these legal matters. Professional neglect involves "indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy,* 684 N.W.2d 256, 259–60 (Iowa 2004). Professional neglect generally involves more than a single act or omission and usually involves procrastination. *Id.* at 260. In the Verdoorn, Hinrichs, Bosma, and Moet estate matters, he failed to file reports, inventories, and tax returns in a timely fashion. He failed to contact an out-of-state attorney to handle the closing of the sale of a parcel of land. In the Matlock and Davidson matters, he failed to serve the defendant in a civil action, neglected to conduct discovery, failed to respond to a motion for summary judgment, and failed to appear at hearings. Not only did he neglect these matters, on numerous occasions, he misrepresented the status of these cases to his clients. Misrepresenting the status of a matter to a client typically warrants a more severe sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters,* 646 N.W.2d 111, 114 (Iowa 2002). Further, we have said more severe discipline is needed when the attorney's actions caused harm to his or her clients or to third parties. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay,* 606 N.W.2d 1, 4 (Iowa 2000). Such is the case here, particularly in the Matlock and Davidson cases.

 Additionally, Honken's failure to respond to the Board's inquiries on six separate occasions also requires a more severe sanction. Attorneys are expected and we demand that they cooperate with disciplinary investigations. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins,* 556 N.W.2d 456, 457 (Iowa 1996).

This is the first disciplinary action taken against Honken. The evidence presented to the Commission indicated Honken's conduct was not the result of an isolated incident but took place over an extended period. The first violations charged by the Board occurred in 1999 and continued through 2003.

Even though the Board did not charge Honken with any violations prior to 1999, testimony introduced on the issue of the appropriate sanction indicated Honken was having some of these same problems before he left his Sibley law firm. Honken's partners in his Sibley law firm became concerned about Honken's ability to practice ethically as early as 1994. While at the law firm, Honken did not return client calls, did not file court papers in a timely manner, and did not pay attention to clients' files. In one case, a client sued him and the firm for malpractice, and the firm's insurance company paid the claim. This professional neglect caused the firm to ask him to resign from the partnership.[2]

 Finally, Honken claims many of his violations were a product of his depression. He claims he has been treated and most of his health issues are now resolved. Although depression can impact our approach to discipline, we consider depression a personal problem of the lawyer that

---

2. Perhaps if the firm had reported this conduct to the Board earlier, many of the problems created by Honken in these six matters might not have occurred. *See* Iowa Code of Professional Responsibility DR 1–103(A) (stating "[a] lawyer possessing unprivileged knowledge of a violation of DR 1–102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation").

does not excuse the misconduct. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold,* 642 N.W.2d 288, 295 (Iowa 2002).

In assessing the multiple violations, the serious breaches of ethics, the period over which the violations occurred, the harm done to his clients, his failure to cooperate with the Board in its investigation, and his depression, we are convinced the Commission's recommendation of a six-month suspension minimizes the seriousness of what has occurred. A more appropriate sanction for Honken's conduct is a two-year suspension. This will serve to deter similar conduct and preserve the integrity of the profession in the eyes of the public.

## V. Disposition.

We suspend Honken's license to practice law in this state indefinitely with no possibility of reinstatement for two years. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12. Upon any application for reinstatement, Honken must establish that he has not practiced law during the suspension period and that he has in all other ways complied with the requirements of Iowa Court Rules 35.13 (procedure on application for reinstatement) and 35.21 (notification of clients and counsel). Additionally, Honken must show proof of repayment for the advance he received on his attorney fees in the Bosma matter and show proof of legal malpractice insurance. Costs of this action are taxed to Honken pursuant to Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**