**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**
Complainant,

v.

**Donald F. MOONEN, Respondent.**

No. 05–1090.

Supreme Court of Iowa.

Dec. 2, 2005.

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Nathan C. Moonen, Epworth, for respondent.

WIGGINS, Justice.

The Iowa Supreme Court Attorney Disciplinary Board (Board) filed a complaint alleging Donald F. Moonen violated numerous rules of the Iowa Code of Professional Responsibility in his handling of four different legal matters and for his

failure to respond to the Board's notices of complaint. The Grievance Commission (Commission) found the Board had proven many of the alleged violations and recommends we suspend Moonen's license to practice law for sixty days. While we agree with the Commission Moonen's conduct violated numerous rules of the Iowa Code of Professional Responsibility, we conclude the nature of his conduct calls for a longer suspension. We therefore suspend Moonen's license to practice law in this state indefinitely with no possibility of reinstatement for eighteen months.

## I. Proceedings Before the Grievance Commission.

The Board filed a complaint against Moonen with the Commission. The original complaint contained two counts alleging Moonen violated various disciplinary rules. During the pendency of the proceedings, the Board amended the complaint by adding a third count alleging further violations of the disciplinary rules.

Count I claims Moonen: (1) neglected legal matters as trustee and attorney for the Evelyn M. O'Connell trust created by his aunt, which he handled from 1998 to 2002; (2) failed to maintain complete records of the funds and property of the trust and render appropriate accounts regarding them; (3) failed to pay to the beneficiaries of the trust the assets they were entitled to receive; (4) failed to disclose to the beneficiaries and their attorney information they were entitled to receive; (5) loaned trust funds to himself and his wife without providing promissory notes or loan agreements; (6) used delaying tactics and was uncooperative in litigation brought against him by the beneficiaries in connection with his handling of the trust; and (7) paid himself fees of $20,321.39 from the trust upon his removal as trustee without obtaining court approval or informing the successor trustee.

Count I further alleges Moonen's conduct violated DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(4) (providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law), DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter), DR 7–102(A)(3) (providing in the representation of a client a lawyer shall not conceal or knowingly fail to disclose that which the lawyer is required by law to reveal), DR 9–102 (providing in DR 9–102(B)(3)–(4) a lawyer shall maintain complete records of client funds, render appropriate accounts, and pay or deliver to the client such funds as the client is entitled to on the client's request), and DR 9–103(A) (providing every lawyer in private practice shall maintain on a current basis books and records sufficient to demonstrate compliance with DR 9–102).

Count II claims Moonen did not reply to the first, second, and third notices of complaint received by Moonen that were sent by the Board in connection with his work as attorney for the estate of Evelyn Simon. Count II further alleges Moonen's conduct violated EC 1–4 (providing the integrity of the legal profession can be maintained only if a lawyer upon request assists committees and boards having the responsibility for the disciplinary rules), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (providing a lawyer shall not engage in any

other conduct that adversely reflects on the fitness to practice law).

Count III claims Moonen: (1) neglected legal matters as attorney for the executors of the estate of Lucille E. Kuehn; (2) neglected legal matters as attorney for the executor of the estate of Eva Mae Weigel; (3) failed to close those estates after receiving multiple delinquency notices from the clerk of court; and (4) failed to respond to the notices of complaint sent by the Board. Count III further alleges Moonen's conduct violated EC 1–4 (providing the integrity of the legal profession can be maintained only if a lawyer upon request assists committees and boards having the responsibility for the disciplinary rules), DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law), and DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter).

The Board sought discovery from Moonen by filing interrogatories, request for production of documents, and requests for admission. Moonen failed to respond to the Board's discovery. The Board filed a motion to compel Moonen to respond to the Board's interrogatories and request for production of documents. In the motion, the Board stated it had also served requests for admission on Moonen that he did not answer. The motion was unresisted and sustained, with the Commission deeming the matters in the requests for admission admitted by operation of law. The ruling also gave Moonen a deadline to answer the interrogatories and produce the documents requested by the Board or the Commission would impose sanctions.

Moonen did not answer the interrogatories or produce the documents in the time required under the Commission's order. The Board moved for sanctions against Moonen for his failure to comply with the ruling on the motion to compel. The motion for sanctions was unresisted and sustained. In its order, the Commission prohibited Moonen from offering any exhibits or objecting to any of the Board's exhibits. As an additional sanction, the Commission deemed the paragraphs denied by Moonen in counts I and II admitted. Further, the Commission deemed the allegations in count III admitted due to Moonen's failure to file an answer to count III. See Iowa Ct. R. 36.7 (providing respondent's failure to file an answer results in respondent admitting the allegations of the complaint). Finally, because Moonen did not answer the Board's second requests for admission, the Commission deemed those matters admitted as well.

At the hearing, the Board asserted it was not required to set forth proof of the allegations in the complaint because of the matters deemed admitted, but it did so anyway in order to give the Commission context in evaluating Moonen's ability to practice law and the sanctions he may deserve. The testimony presented by the Board at the hearing focused on the allegations of count I, with exhibits supplementing that testimony. The Board also presented other exhibits pertaining to the claims in counts II and III.

In regards to count I, the Commission concluded Moonen had violated DR 6–101(A)(3) by neglecting a client's legal matter, DR 7–102(A)(3) by concealing or knowingly failing to disclose that which a lawyer is required by law to reveal in view of his non-responsiveness to discovery, DR 1–102(A)(1) by admittedly violating a disciplinary rule, DR 1–102(A)(4) by engaging in misrepresentation in regards to not be-

ing forthcoming to the court while under oath when asked about fees he took in the O'Connell trust, and DR 1–102(A)(5) by engaging in conduct prejudicial to the administration of justice by his stalling and noncompliance with court orders and discovery in the underlying matter and the disciplinary proceeding. The Commission found the Board failed to prove Moonen violated DR 9–102, DR 9–103(A), and DR 1–102(A)(6).

In regards to count II, the Commission concluded the Board failed to prove count II of the complaint. As for count III, the Commission concluded because Moonen had not answered that count of the complaint all matters alleged were deemed admitted. Thus, the Commission concluded Moonen had violated DR 6–101(A)(3), EC 1–4, DR 1–102(A)(1), DR 1–102(A)(5), and DR 1–102(A)(6).

The Commission filed a report in our court unanimously recommending Moonen's license be suspended for a period not to exceed sixty days pursuant to Iowa Court Rule 35.12. The Commission also recommended Moonen be required as part of his reinstatement to attend a law office management CLE program within 180 days. Finally, the Commission recommended Moonen receive a psychiatric evaluation within the suspension time and undergo any recommended counseling and/or medication.

## II. Scope of Review.

Our review of the attorney disciplinary proceeding is de novo. Iowa Ct. R. 35.10(1). In deciding the matter, the court considers the findings of fact and disciplinary recommendation of the Commission. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 815 (Iowa 2004). The Board must prove "ethical violations by a 'convincing preponderance of the evidence.'" *Iowa Supreme Ct.* *Bd. of Prof'l Ethics & Conduct v. Williams*, 675 N.W.2d 530, 531 (Iowa 2004) (citation omitted).

## III. Factual Findings and Ethical Violations.

The Board served Moonen with interrogatories, request for production of documents, and requests for admission. *See* Iowa Ct. R. 35.6 (permitting discovery in an attorney disciplinary proceeding pursuant to the Iowa Rules of Civil Procedure as provided in rules 1.501 to 1.517, 1.701, 1.702 and 1.714 to 1.717). Moonen failed to respond to these discovery requests. Moonen's failure to respond to the requests for admission requires us to consider all the matters stated in the requests as admitted for purposes of the disciplinary proceeding. Iowa R. Civ. P. 1.510(2).

The Commission sanctioned Moonen for failure to respond to the Board's interrogatories and request for production of documents. One of the sanctions imposed by the Commission was that all factual allegations denied by Moonen in counts I and II of the complaint were admitted for purposes of the disciplinary proceeding. This sanction is consistent with the sanctions allowed under our rules of civil procedure. *Id.* R. 1.517(2)(*b*)(1). For purposes of our de novo review, we deem the factual allegations contained in counts I and II of the complaint admitted.

Finally, the Commission found Moonen's failure to file an answer to count III of the complaint served as an admission by Moonen of the allegations contained in that count. Our rules provide:

If the respondent fails or refuses to file [an] answer within the time specified, the allegations of the complaint shall be considered admitted and the matter shall proceed to hearing on the issue of the appropriate sanction.

Iowa Ct. R. 36.7. Consequently, we consider all matters contained in count III of the complaint admitted. Using these admissions of law and fact, together with our review of the record, we make the following findings of fact and determinations of Moonen's ethical violations.

**O'Connell Trust Matter.** O'Connell, Moonen's aunt and the settlor of the trust, died in July 1998. Moonen served his aunt's trust as its attorney and trustee. The trust contained approximately $200,000 in gross assets to be divided among five beneficiaries, yielding around $30,000 net to each beneficiary. The trust required distribution of the assets of the trust upon O'Connell's death. As of the time of Moonen's removal as trustee on May 17, 2002, almost four years after the death of O'Connell, the assets of the trust were not fully distributed.

In November 2000, several of the beneficiaries hired an attorney, Gary Norby, to assist them in getting a copy of the trust instrument and other information from Moonen regarding the trust. In December 2000, after Moonen became aware of Norby's representation, he made a partial distribution of assets by distributing $3000 to each beneficiary. This distribution did not deter the beneficiaries' request for information. Norby continued to make repeated requests of Moonen for information about the trust. Moonen failed to respond to all of these requests.

Approximately six months after Norby's initial request, Norby filed a petition on behalf of the beneficiaries requesting the court to order Moonen to make an accounting to the beneficiaries. Moonen failed to file a timely answer, so Norby served him with a notice of intent to take a default. The notice prompted Moonen to file an answer denying every allegation, including that he is a resident of Dubuque County, Iowa.

Norby then filed interrogatories and a request for production of documents, to which Moonen did not respond. Norby eventually filed a motion to compel discovery. The court granted Norby's motion over Moonen's reply and resistance attributing his delay to a water pipe break in his office. Moonen did not comply with the ruling on the motion to compel. In December 2001, Norby filed a motion for sanctions. The court ordered Moonen to answer the discovery within seven days of its order and pay the plaintiffs $300 as a sanction to compensate them for the expense of filing the motion. After the court issued the order for sanctions, Moonen made another partial payment to the beneficiaries in the sum of $8000.

In December 2001, Moonen also responded to the interrogatories and produced a copy of the trust instrument. He also produced many unorganized documents without any accounting of trust receipts and disbursements. This late production required the court to continue the trial.

In reviewing the trust documents, Norby realized the trust required distribution of all trust assets to the beneficiaries upon O'Connell's death. He also waded through the documents to put together his own accounting of the trust. In doing so, Norby noticed the inheritance and income tax returns were delinquent, deposits were being delayed, and undocumented loans and other payments were made from the trust to Moonen and his family.

Moonen took $4000 in loans in place of fees he felt he earned until he could become organized and bill the trust what was actually owed to him. He made $3000 of these loans to his wife to avoid the appearance of self-dealing. He paid the loans back to the trust within nine months. He paid twenty-eight dollars in interest, sub-

stantially less than market interest rates. Moonen also took $12,500 in fees without accounting for his time, without receiving a waiver from the beneficiaries, and without an order of the court.

Upon completing his review of the matter, Norby filed an application on behalf of his clients to remove Moonen as trustee. The application alleged Moonen committed numerous violations of the Iowa Code and breached his fiduciary duty to the beneficiaries. Moonen resisted the removal application.

Moonen admitted his "gross neglect" in acting as trustee at the disciplinary hearing; at the removal hearing, however, Moonen attempted to justify his dilatory handling of the trust, the loans he made to himself, and the $12,500 in fees he took from the trust. At the removal hearing, Moonen also misrepresented the amount of the fees he took from the trust by knowingly failing to disclose to the court that he wrote himself a check for fees in the amount of $20,321.39 dated the day before the hearing.

The court removed Moonen as trustee. The court found and we also find Moonen: (1) failed to distribute the trust assets to the beneficiaries as required by the trust; (2) failed to timely inform the residuary beneficiaries of their interests in the trust; (3) failed to timely provide requested trust information and accounting; (4) failed to timely file income and inheritance tax returns; (5) made $4000 in loans to himself and his wife absent any notes or loan agreements; (6) paid himself $12,500 in trust assets for legal fees, which were not evidenced by a bill until the hearing where time slips were presented; and (7) failed to timely deposit trust assets and liquidate certain trust investments resulting in a loss of market value to the beneficiaries. The court further found Moonen had "been dilatory in his handling of this trust" and

did not find his other work or family illness excused the delay in distributing the trust assets. The court removed Moonen as trustee and ordered him to turn over all trust assets and records to a successor trustee.

Moonen turned the trust records over to the successor trustee. The records were unorganized, and disclosed Moonen had failed to properly designate the trust property as required by Iowa Code section 633.4210(2) (2001). The successor trustee reviewed Moonen's work and determined it had to amend the income and inheritance tax returns due to Moonen's errors. These errors required the trust to incur additional expenses.

Seventeen days after the court removed Moonen as trustee, Moonen notified the successor trustee he had written himself a $20,321.39 check on May 15, 2002 for additional fees. Moonen failed to disclose to the court that he had taken these fees when he testified at the removal hearing on May 16. The May 15 check cleared the account on June 3 causing the account to go into overdraft status. Moonen repaid the additional fees as requested by the successor trustee. Moonen never made any further claims for fees or presented any documentation to the probate court or the Commission showing he was entitled to these additional fees.

The trust incurred approximately $2300 in tax penalties, $8000 in Norby's attorney fees, and $1040 in fees to the successor trustee to conclude the matter. Had Moonen acted diligently and competently in this matter, the trust would not have incurred these additional expenses.

 Professional neglect usually involves procrastination and concerns "'indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the

responsibilities a lawyer owes to a client.'" *Honken*, 688 N.W.2d at 821 (citation omitted). A failure to take the necessary actions in estate matters in a timely fashion constitutes professional neglect. *Id.* Moonen's inattention to the trust matters and his use of delay tactics against the beneficiaries in the litigation seeking an accounting violates DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law), DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter), and DR 7–102(A)(3) (providing in the representation of a client a lawyer shall not conceal or knowingly fail to disclose that which the lawyer is required by law to reveal).

█ In addition to his inattention, it is undisputed Moonen loaned trust funds to himself without providing promissory notes or loan agreements, took fees without accounting for his time, failed to keep a complete record of the trust's assets, failed to account to the beneficiaries, and failed to make timely distributions of funds as required by the trust. This conduct violates DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law), DR 9–102 (providing in DR 9–102(B)(3)–(4) a lawyer shall maintain complete records of client funds, render appropriate accounts, and pay or deliver to the client such funds as the client is entitled to on the client's request), and DR 9–103(A) (providing every lawyer in private practice shall main-

tain on a current basis books and records sufficient to demonstrate compliance with DR 9–102).

█ Moonen complicated the matter by not disclosing the final payment he took from the trust at the removal hearing. Misrepresentations made to the court are "'a grave and serious breach of professional ethics.'" *Honken*, 688 N.W.2d at 820 (citation omitted). "A lawyer must fully disclose all facts tangentially relevant and material to a judge's decision," particularly in regards to court fees. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Humphrey*, 551 N.W.2d 306, 308 (Iowa 1996). The deliberate misleading of the court or negligent failure to disclose relevant information constitutes a serious violation of disciplinary rules. *Id.* Moonen's actions in this regard violate DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(4) (providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law), and DR 7–102(A)(3) (providing in the representation of a client a lawyer shall not conceal or knowingly fail to disclose that which the lawyer is required by law to reveal).

█ **Simon Estate Matter.** The Board sent three notices of complaint regarding Moonen's work as attorney for the Simon estate to Moonen requesting him to reply to the complaint. Moonen did not reply to any of the notices of complaint. His failure to do so violated DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice) and DR 1–102(A)(6) (providing a lawyer shall not engage in any other con-

duct that adversely reflects on the fitness to practice law). *See Comm. on Prof'l Ethics & Conduct v. Pracht,* 505 N.W.2d 196, 199 (Iowa 1993) (finding the failure to respond to the committee violates DR 1–102(A)(5) and DR 1–102(A)(6)).

**Kuehn and Weigel Estate Matters.** Moonen opened the Kuehn estate as its attorney in April 2000. He opened the Weigel estate as its attorney in May 1999. The clerk of court sent various delinquency notices to Moonen throughout the administration of the estates. In June 2004, the clerk sent delinquency notices in each estate requiring an order closing the estates be filed within sixty days of the notices. Moonen failed to comply with either notice and the delinquencies were reported to the presiding judge and the Board. *See* Iowa Ct. R. 7.6 (outlining the handling of delinquent inventories and reports).

In September, November, and December, the Board sent notices of complaint to Moonen regarding these matters. Moonen failed to respond to these notices. In the meantime, the court issued orders setting hearings to show cause in each estate as to why the court should not remove the executors in each estate.

Moonen appeared at each hearing. He had not closed the Weigel estate due to lack of an income tax acquittance. The reason the state had not issued the income tax acquittance is that Moonen did not file the 2003 income tax return until September 30, 2004, almost four months after receiving the delinquency notice from the clerk. Moonen eventually received the acquittance and the court closed the Weigel estate on October 23, 2004.

Moonen claimed the problem in closing the Kuehn estate was a certain charitable bequest and lack of an inheritance tax acquittance. The court gave Moonen until January 20, 2005 to resolve the issues and

set the matter for a review hearing on that date. Moonen did not attend the review hearing or file a status report. On January 20, the court set another hearing for February 22 as to why the court should not remove the executors. On February 1, the court reset the hearing for March 4. During this time, the executors were writing letters to several district court judges complaining the estate had been open for five years and every time they made an inquiry of Moonen, he would tell them he would wrap it up, but never did so.

At the March 4 hearing, Moonen appeared and presented evidence the estate paid the court costs and he obtained the inheritance tax acquittance. However, Moonen informed the court he was still waiting for the income tax acquittance. The court continued the hearing until May 6, 2005. In June 2005, when the Commission held the disciplinary hearing, the estate was still open.

■ Moonen's inattention to these probate matters and use of the clerk's office as a tickler system violates DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter), DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Fleming,* 602 N.W.2d 340, 341–42 (Iowa 1999) (finding inattention to probate deadlines violates DR 6–101(A)(3), DR 1–102(A)(1), DR 1–102(A)(5), and DR 1–102(A)(6)).

Moonen's failure to respond to the Board's notices of complaint violates DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the

administration of justice) and DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law). *See Pracht,* 505 N.W.2d at 199 (finding the failure to respond to the committee violates DR 1–102(A)(5) and DR 1–102(A)(6)).

## IV. Sanctions.

 Moonen's misconduct includes neglecting legal matters, loaning money to himself, taking fees without a proper accounting, making a misrepresentation to the court, failing to render appropriate accounts, failing to promptly distribute funds as required by the trust, failing to maintain books and records, and failing to cooperate with the disciplinary process. In determining the sanctions a lawyer must face for misconduct, we have stated:

> The goal of the Code of Professional Responsibility is "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." When deciding on an appropriate sanction for an attorney's misconduct, we consider "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public." We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Honken,* 688 N.W.2d at 820 (alteration in original) (citations omitted).

 Precedents in attorney discipline cases involving neglect are of little value, and we must consider each case on an individual basis. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman,* 683 N.W.2d 549, 553 (Iowa 2004). While neglect alone ordinarily deserves a sanction from reprimand to a six-month suspension, neglect compounded by other misconduct requires a more severe sanction. *Id.; see Honken,* 688 N.W.2d at 820–22 (imposing an indefinite suspension with no possibility of reinstatement for two years where the conduct involved "multiple acts of making misrepresentations to the court, disregarding court orders, neglecting client matters, misrepresenting the status of matters to his clients, and failing to respond to the Board's inquiries"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo,* 619 N.W.2d 333, 337–39 (Iowa 2000) (imposing an indefinite suspension with no possibility of reinstatement for three years where the conduct involved accepting fees prior to court authorization, failing to deposit client funds in a trust account, engaging in neglect and dishonesty, disregarding court orders, tending to procrastinate resulting in loss to clients of time and expense, and disregarding disciplinary rules); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon,* 602 N.W.2d 336, 338–39 (Iowa 1999) (revoking an attorney's license to practice law for being intentionally and repeatedly dishonest with law partners, a judge, and clients, neglecting clients' legal matters and misrepresenting the status of their cases, repeatedly misappropriating client funds to cover up wrongdoing, and ignoring inquiries from the board); *Comm. on Prof'l Ethics & Conduct v. Davidson,* 398 N.W.2d 856, 858–61 (Iowa 1987) (imposing an indefinite suspension with no possibility of reinstatement for two years where the conduct involved making a misrepresentation to the court regarding a claim for compensation, misappropriating estate funds, commingling client funds, negligently handling a client's affairs, and failing to turn over all estate property to the successor executor pursuant to court order).

 There are mitigating factors present in this case. Indeed, this case is "a classic example of the special difficulties

a sole practitioner faces in stressful times." *Comm. on Prof'l Ethics & Conduct v. Humphrey,* 529 N.W.2d 255, 258 (Iowa 1995). Moonen experienced a broken water pipe in his office, and his wife became ill. He may also suffer from depression. Although such problems may influence the disciplinary action this court takes, these troubles are "a personal problem of the lawyer that does not excuse the misconduct." *Honken,* 688 N.W.2d at 821–22; *see also Comm. on Prof'l Ethics & Conduct v. Paulos,* 410 N.W.2d 260, 262 (Iowa 1987) (refusing to excuse "unsatisfactory performance because of an attorney's ill health, emotional problems, or the general stress of a busy law practice"). In addition, Moonen claims to have experienced a heavy workload during the time in question. However, such pressures do not excuse attorneys from timely completing legal matters entrusted to them because they may decline work, seek assistance, or withdraw from work. *Pracht,* 505 N.W.2d at 198. Moonen pursued none of these options.

Another mitigating factor is that Moonen has been in practice for nearly thirty years without any problems similar to those now at issue. *See Comm. on Prof'l Ethics & Conduct v. Nadler,* 467 N.W.2d 250, 254 (Iowa 1991) (stating "[i]n determining what discipline is appropriate, we consider prior disciplinary action taken against the lawyer"). Still, the multiple violations and the continual nature of the incidents detract from this as a mitigating factor. *See Honken,* 688 N.W.2d at 821 (acknowledging a disciplinary action as the first taken against an attorney but also recognizing his "conduct was not the result of an isolated incident but took place over an extended period").

The aggravating factors we must consider include multiple incidents of neglect. *Moorman,* 683 N.W.2d at 553. Moonen's

various actions throughout his handling of the O'Connell trust and the Kuehn and Weigel estates demonstrate his neglect was not isolated in nature. Additionally, the "failure to respond to the proceedings and to cooperate with the Board reflects adversely on his general fitness to practice law and is an additional factor in imposing discipline." *Id.* at 554. Moreover, it is significant Moonen's actions caused harm to others, in terms of cost to the beneficiaries in the O'Connell matter and delay to the beneficiaries and executors in the O'Connell, Kuehn, and Weigel matters. *Honken,* 688 N.W.2d at 821. Finally, Moonen's misrepresentation to the court as to his trustee fees is not only a breach of professional ethics in itself but also serves to exacerbate his negligence in the O'Connell matter. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rauch,* 650 N.W.2d 574, 578 (Iowa 2002) (finding a lawyer's violation of a disciplinary rule "is seriously aggravated by his misrepresentation to the court").

In light of the multiple violations, his neglect of multiple legal matters, his self-dealing in loaning trust funds to himself and his wife, his taking of fees without accounting for his time, his misrepresentation to the court, his failure to cooperate with the Board, the harm he caused his clients, the period of time over which these violations occurred, the mitigating factors, and the aggravating factors, we conclude a suspension of eighteen months is warranted in this case.

## V. Disposition.

We suspend Moonen's license to practice law in this state indefinitely with no possibility of reinstatement for eighteen months. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12. Upon any application for reinstatement, Moonen must establish he has

not practiced law during the suspension period and he has in all other ways complied with the requirements of Iowa Court Rules 35.13 (providing the procedure on application for reinstatement) and 35.21 (providing for notification of clients and counsel). He shall also establish that he has reimbursed the trust, or its beneficiaries, for the attorney fees paid by them to Norby, for the fees paid to the successor trustee, and for the tax penalties paid by the trust, with interest at the legal rate to the date of their payment. We tax the costs of this action to Moonen pursuant to Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**