# IN THE SUPREME COURT OF IOWA

No. 14–1607

Filed March 20, 2015

Amended June 2, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MICHAEL J. CROSS,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed numerous violations of the rules of professional conduct and recommends suspension. **LICENSE SUSPENDED.**

Charles L. Harrington, Des Moines, for complainant.

Michael J. Cross, Hampton, pro se.

**ZAGER, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged attorney Michael J. Cross with violations of several of our ethical rules governing an attorney's management of client trust accounts after an audit revealed numerous trust account irregularities. The Board also charged Cross with violations of several other ethical rules for failing to file employee-payroll-withholding-tax declarations and pay these taxes for years 2009 through 2011, for failing to file state and federal income tax returns for years 2009 through 2011, and for failing to supply the Board with requested documentation concerning these alleged tax violations. Finally, the Board charged Cross with improperly practicing under a trade name in violation of our ethical rules. After a hearing, a division of the Grievance Commission of the Supreme Court of Iowa found Cross violated a number of our ethical rules. The commission recommended we suspend Cross's license for one year. It also recommended that we require Cross to demonstrate he has satisfied all outstanding payroll and income tax liabilities due state and federal taxing authorities as a condition of reinstatement. Upon our de novo review, we concur in most of the findings of rule violations, and agree with the commission that a one-year suspension is appropriate.

**I. Factual Background.**

Cross was admitted to practice law in Iowa in 1973. He currently works in Hampton, Iowa, as a solo practitioner. This case turns on an audit performed by the Client Security Commission on Cross's client trust account and accounting records in 2012. The audit showed noncompliance with a number of our rules.

**A. The 2012 Audit.** On May 22, 2012, an auditor with the Client Security Commission contacted Cross by phone. This call was made in

response to a report received by the Client Security Commission expressing concern about Cross's financial and physical health and the potential risk to his clients. The auditor made an appointment to meet with Cross at his office for May 30. During their conversation, Cross informed the auditor that his records were not up to date but that he would spend the weekend preparing them for review.

When the auditor arrived for the May 30 meeting, Cross informed the auditor that he had not performed any trust account reconciliations since November 2009. At that time, Cross had experienced difficulties with his accounting software and simultaneously discovered a $99.60 difference between the bank balance and the total of the client subaccounts, which he could not explain. Cross also informed the auditor that he had failed to maintain contemporaneous client ledgers since November 2009. While Cross had attempted to reconstruct the client ledgers over the preceding weekend using bank statements, he had been unsuccessful in completing the task. He was also unable to provide the auditor with a check register. Over the course of the next several months, Cross was able to reconstruct several client ledgers. However, these reconstructed ledgers comprised only a sample of the ledgers that should have been available, and Cross never provided a complete set of client ledgers to the auditor.

In performing the audit, the auditor identified three bank accounts relevant to Cross's client-trust-account management practices: (1) the client trust account; (2) the Cross Law Firm account; and (3) a bank account in the name of MJC Services, Inc. (MJC). The Cross Law Firm account was the primary business operations account for Cross's practice until 2010. However, when Cross opened the MJC account in 2010, it became the primary business operations account for the firm.

Cross used the MJC account to protect his assets from levies by creditors.

Due to the complete lack of record keeping, the auditor was required to reconstruct a journal for the trust account from bank statements. The auditor then conducted an extensive audit by cross-referencing the reconstructed journal with the few client ledgers provided by Cross and bank statements from the other accounts. Based on the audit, the auditor concluded "Cross completely lost control and accountability for client funds deposited in his trust account" and "generally treated all the funds in the accounts as his funds to do with as he chose without regard to whether his fees had been earned or not and without notifying clients of withdrawals." The auditor further concluded, "Cross . . . committed nearly every wrong possible in handling client funds and managing an attorney's trust account," and enumerated the following list of deficiencies:

(1) "Failed to perform monthly reconciliations";

(2) " 'Borrowed' from the trust account";

(3) "Paid personal and business expenses from the trust account";

(4) "Overdrawn specific client subaccounts";

(5) "Overdrawn the trust bank account";

(6) "Withdrawn cash from the trust account";

(7) "Failed to maintain client subaccounts";

(8) "Failed to deposit client funds in [the] trust account when required";

(9) "Taken fees before they were earned";

(10) "Commingled trust funds with non-trust funds";

(11) "Withheld and failed to deposit a portion of cash receipts";

(12) "Failed to provide clients with written notification of withdrawal of trust funds"; and

(13) "Failed to maintain trust account records for six years."

Specifically, the audit revealed that as of November 2009, eight client subaccounts had negative balances, totaling $11,736.80. One subaccount, entitled "Cross Law Firm," had a negative balance of $11,132.64, and another subaccount, entitled "MJC Services," had a negative balance of $80.10. The subaccount names and negative balances suggested that as early as November 2009, Cross had been withdrawing unearned fees from the trust account. Also significant, on February 23, 2011, Cross transferred $8500 by check from the MJC account to the trust account so the trust account would balance.

The audit also revealed that on 102 separate occasions between 2009 and 2012, Cross used the trust account to pay personal credit card bills by electronic transfer. On four separate occasions in 2010, these payments resulted in the trust account being overdrawn. The audit further established that at various times Cross used the trust account to pay personal and business expenses, including heating bills, cell phone bills, office telephone bills, office supply bills, and the corporate filing fee for the incorporation of MJC in 2009.

The audit further revealed that after the MJC account was opened in 2010, Cross stopped using the Cross Law Firm account almost entirely. Additionally, he began using the MJC account for the receipt and disbursement of client funds, without regard to whether he should handle such funds through the trust account. With respect to eleven identifiable clients, the audit demonstrated that Cross deposited advance fee payments and prepaid expenses in the MJC account as opposed to the trust account. For example, as it relates to K.A., whom Cross represented in a dissolution of marriage action, the audit revealed that as of November 12, 2010, Cross had earned sixty dollars in his representation of her. However, on that same date, Cross deposited a

$600 fee payment from K.A. into the MJC account. Additionally, the audit established that Cross systematically failed to provide clients with contemporaneous written notifications and accountings of withdrawals from the trust account, with the exception of several real estate closings and probate matters.

**B. Tax Matters.** In the audit report, the auditor also noted that Cross's secretary reported that Cross had been making only net payrolls for some time. That is, while withholding taxes from employee wages were calculated and shown as withheld, Cross failed to file employee-payroll-tax declarations, failed to segregate these funds, and failed to pay these taxes to the appropriate taxing authorities. Cross admitted this during the audit. Cross also admitted that he had not filed his federal or state income tax returns for the years 2009 through 2011, and that his combined payroll and income tax debt exceeded $100,000.

**C. Client Security Commission Form.** For the years 2009 through 2012, Cross completed and signed a "Combined Statement and Questionnaire" for the Client Security Commission. Despite his lack of record keeping and the audit findings to the contrary, Cross certified that he kept all client funds and retainers in a separate account from his own, he performed monthly reconciliations of the trust account with bank statements and client ledgers, he preserved client-trust-account records for six years, and he never overdrew the trust account.[1]

**II. Procedural History.**

On September 25, 2013, the Board requested that Cross provide it with documentation concerning his employment-payroll taxes and

---

[1]With respect to Cross's alleged tax misconduct, the client security questionnaires in the record do not contain Cross's responses concerning whether he had filed his state and federal income tax returns.

income taxes. On October 24, Cross responded to the Board indicating that he needed more time to respond to its request. Cross never supplied the Board with the requested documentation.

Based on the completed audit, the Board filed its complaint against Cross on March 4, 2014. The complaint alleged numerous violations of the Iowa Rules of Professional Conduct and the Iowa Court Rules. In his original answer, Cross denied many of the allegations in the complaint and maintained he had not violated any of our ethics rules. His original answer, however, admitted several factual allegations forwarded by the Board. Specifically, with respect to the Board's charge that he improperly commingled client funds with his own, Cross's answer stated:

> Respondent admits he did not use his trust account solely for unearned fees or funds of clients, but did deposit earned fees into said account to avoid creditor levy [and] paid office expenses and personal expenses out of the trust account . . . .

The Board also filed and served Cross with a request for admissions. Cross failed to respond to this request.

On March 17, the Board served Cross with requests for production of documents and interrogatories. He did not respond to them. On May 16, the Board filed a motion to compel responses to the document requests, interrogatories, and prior request for admissions. Cross did not resist the motion, and the commission ordered him to serve responses no later than June 16. The commission threatened to impose sanctions if Cross failed to comply with the June 16 deadline. Additionally, the commission deemed admitted the requests for admissions Cross had failed to answer.

Cross failed to respond to the Board's document requests or interrogatories by the June 16 deadline. As a result, on July 14, the

commission imposed sanctions. Specifically, Cross was precluded at the hearing from offering any witnesses or evidence other than his own testimony, objecting to any of the Board's exhibits, cross-examining any witnesses presented by the Board, and testifying other than in mitigation. In addition, several facts alleged in the Board's complaint were deemed established for the purposes of the action. Specifically, the commission ruled as established: (1) Cross failed to deposit unearned fees and prepaid expenses into the trust account with respect to eleven separate clients; (2) Cross failed to maintain a check register for the trust account since November 2009; (3) Cross failed to perform trust account reconciliations since 2009; (4) several clients had negative balances in their subaccounts at various times, indicating other client funds had been used for their purposes; (5) the trust account was overdrawn on four separate occasions in 2010; and (6) Cross's client security questionnaires for years 2009 through 2012 were not truthful.

In July, an evidentiary hearing was held before the commission. At the hearing, Cross filed an amended and substituted answer in which he admitted all but one of the factual allegations in the Board's complaint, and all but one of the alleged rule violations in the Board's complaint. Specifically, Cross denied that he had failed to deposit unearned fees into the trust account and improperly taken fees before they were earned. Consequently, Cross maintained he had not violated any of our ethical rules prohibiting such conduct. However, as noted above, the commission had already ruled this conduct as established for the purposes of the action.

At the hearing before the commission, Cross did not testify. Instead, he made a "professional statement" in which he noted he had "admitted each and every violation except the violation concerning

depositing unearned fees." Cross attempted to explain that it was his general practice in dissolution cases to charge a flat fee of approximately $500 after he met with a client for the second time but prior to the filing of the petition. Prior to these second meetings, Cross generally prepared documents including "the petition, original notice, confidential information form[s], statistical report[s], and discovery documents." Cross asserted that during these second meetings, he would typically review these documents with the client. Therefore, while the audit and records demonstrated that he had deposited client funds in the MJC account prior to filing the petition—possibly indicating he had failed to deposit unearned fees into the trust account—those funds had in fact been earned by the conclusion of the second meeting. Cross admitted, however, that in each of the instances in which he charged a flat fee, he "requested $185 towards the filing fee, which [he] never . . . deposit[ed] in the trust account."

The commission issued its written findings of fact, conclusions of law, and recommended sanction on September 26. It concluded that in 2008 Cross developed financial difficulties around the same time his secretary took leave due to an auto accident. These financial difficulties were further aggravated when several creditors asserted a levy against the Cross Law Firm account. The commission also found that around this same time Cross experienced difficulties with his accounting software. However, the commission did not consider Cross's financial, personnel, or technological excuses sufficient to justify his mismanagement of the trust account. Specifically, it noted, "It is a practitioner's duty to maintain the records required regardless of the specific media on which the records are kept." The commission credited Cross, however, noting that no clients had filed a complaint against him

and that "no client was cheated out of funds." Ultimately, the commission concluded that Cross violated all of the rules alleged by the Board and recommended that we suspend his license for one year. It also recommended that we require Cross to demonstrate he has satisfied all outstanding payroll and income tax liabilities due state and federal taxing authorities as a condition of reinstatement.

### III. Standard of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 63 (Iowa 2014). The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 113 (Iowa 2014). We give the commission's findings and recommendations respectful consideration, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 696 (Iowa 2014). "Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton,* 784 N.W.2d 761, 764 (Iowa 2010).

### IV. Review of Alleged Ethical Violations.

The Board has alleged numerous violations of the Iowa Rules of Professional Conduct and the Iowa Court Rules. In his amended and substituted answer, Cross admitted each paragraph of the Board's complaint, except as it relates to factual allegations and rule violations concerning the improper deposit and withdrawal of unearned fees. "Factual matters admitted by an attorney in an answer are deemed established, regardless of the evidence in the record." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson,* 838 N.W.2d 528, 532 (Iowa 2013).

However, an attorney's stipulation to a violation of our ethical rules is not binding on us. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 181 (Iowa 2014). We turn now to consider the individual rule violations alleged by the Board.

**A. Trust Account Violations.** The Board alleges Cross violated Iowa Rules of Professional Conduct 32:1.15(a), (c), and (f) and Iowa Court Rules 45.1(1), 45.2(3), and 45.7(3) and (4) as a result of his management of the trust account.[2] The Board also alleges Cross violated Iowa Rule of Professional Conduct 32:8.4(c) by falsely certifying on his client security questionnaire that he properly managed the trust account. We address these alleged rule violations together because they all relate to Cross's trust account practices.

1. *Trust account management.* Rule 32:1.15(a) requires a lawyer to "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Iowa R. Prof'l Conduct 32:1.15(a). Funds must be kept in a separate account and "[c]omplete records of such account funds . . . shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation." *Id.* A comment to the rule states, "A lawyer should maintain on a current basis books and records in accordance with generally accepted accounting practice and comply with any recordkeeping rules established by law or court order." *Id.* cmt. 1.

Rule 32:1.15 also incorporates chapter 45 of the Iowa Court Rules, which directs an attorney on how to properly maintain a client trust

---

[2]All references to the Iowa Rules of Professional Conduct and to the Iowa Court Rules are to the current version, unless otherwise specified.

account. *See id.* r. 32:1.15(f); Iowa Ct. R. ch. 45. Similar to Iowa Rule of Professional Conduct 32:1.15(a), rule 45.1 also prohibits attorneys from commingling their own funds with client funds. *See* Iowa Ct. R. 45.1. Specifically, rule 45.1 requires that an attorney maintain a clearly designated trust account to hold funds received from clients or third parties. *Id.* "No funds belonging to the lawyer or law firm may be deposited in this account," with the exception of "[f]unds reasonably sufficient to pay or avoid imposition of fees and charges that are a lawyer's or law firm's responsibility." *Id.* r. 45.1(1).

Rule 32:1.15(c) governs a lawyer's conduct with respect to advance fee and expense payments. Iowa R. Prof'l Conduct 32:1.15(c). Pursuant to this rule, "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." *Id.* Rule 45.7 also governs a lawyer's treatment of advance fee and expense payments. Iowa Ct. R. 45.7. This rule defines advance fee payments as "payments for contemplated services that are made to the lawyer prior to the lawyer's having earned the fee." *Id.* r. 45.7(1). Advance expense payments are defined as "payments for contemplated expenses in connection with the lawyer's services that are made to the lawyer prior to the incurrence of the expense." *Id.* r. 45.7(2). "A lawyer must deposit advance fee and expense payments from a client into the trust account and may withdraw such payments only as the fee is earned or the expense is incurred." *Id.* r. 45.7(3).

Rule 45.2(3)(*a*) dictates that financial records including ledger records, bank statements, check registers, copies of monthly trial balances, and monthly reconciliations of the client trust accounts, must be maintained by an attorney for six years following the termination of

representation of a client. *Id.* r. 45.2(3)(*a*). Finally, rule 45.7(4) requires an attorney to notify a client in writing and provide a contemporaneous written accounting when withdrawing funds for fees or expenses from the trust account. *Id.* r. 45.7(4).

Applying these rules to the facts of this case, we find Cross has violated all of the rules alleged by the Board with respect to the management of his trust account and his handling of client funds. First, we find Cross violated rules 32:1.15(a) and (f) and rule 45.1 by commingling personal and business funds with client funds. "We have previously determined an attorney failed to hold his own property separate from that of his clients when he 'used the trust account to deposit personal funds and to pay personal and business expenses.' " *Ricklefs*, 844 N.W.2d at 697 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hall,* 728 N.W.2d 383, 387 (Iowa 2007)). Here, Cross admitted in his original answer, in his substituted and amended answer, and during his professional statement at the hearing before the commission that he commingled personal and business funds with client funds and used the trust account to pay personal and business expenses. *See Nelson,* 838 N.W.2d at 532.

Further, there is clear evidence in the record to support these violations. The record clearly established that Cross failed to hold his own property separate from his clients' property and used the trust account to pay personal and business expenses. The audit revealed that Cross frequently used the trust account to pay personal credit card bills, along with a number of other personal and business expenses. The audit also showed that after Cross opened the MJC account in 2010, he began regularly depositing client funds into that account, without regard to whether he should handle such funds through the trust account. While

Cross has forwarded a number of excuses for his conduct, including financial difficulties that began in 2008, we decline to deem Cross's asserted personnel, financial, and technological difficulties sufficient excuses. *See Ricklefs*, 844 N.W.2d at 695, 698, 700 (finding rule 32:1.15(a) and rule 45.1 violations when attorney experienced "financial problems related to unpaid medical bills" and commingled personal and client funds to avoid creditors from levying his bank account, and declining to deem attorney's financial problems a legitimate excuse); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf*, 588 N.W.2d 126, 126–27 (Iowa 1999) (finding violation of Iowa Code of Professional Responsibility for Lawyers DR 9–102(A), the forerunner to rule 32:1.15(a), when attorney used his trust account for the deposit of earned fees and payment of both personal and business expenses to "hide funds from the federal internal revenue service which had levied on his business account for two unpaid payroll tax obligations," and declining to deem attorney's "pressing financial problems" a legitimate excuse). We find Cross violated rules 32:1.15(a) and (f) and rule 45.1(1).

Second, we find Cross violated rules 32:1.15(c) and (f) and rule 45.7(3) by failing to deposit advance legal fees and expenses into the trust account and by withdrawing fees and expenses before they were earned.[3] We begin by noting that as a result of Cross's failure to respond

---

[3]Although we find Cross failed to deposit advance legal fees and expenses into the trust account, and withdrew fees and expenses before they were earned, we do not find this conduct amounts to misappropriation. As noted above, the Board's complaint alleges violations of various trust account rules, including rule 32:1.15. Complaints filed by the Board with the commission must be "sufficiently clear and specific in their charges to reasonably inform the attorney against whom the complaint is made of the misconduct alleged to have been committed." Iowa Ct. R. 35.5. "Because attorney disciplinary actions are 'quasi-criminal' in nature, 'the charge[s] must be known before the proceedings commence.'" *Kelsen*, 855 N.W.2d at 183 n.3 (alteration in original) (quoting *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 122 (1968)).

to the Board's document requests and interrogatories, the commission deemed as established that Cross failed to deposit unearned fees and prepaid expenses into the trust account with respect to eleven separate clients. *See* Iowa R. Civ. P. 1.517(2)(*b*)(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 595 (Iowa 2011) (noting this sanction is similar to sanctions authorized by Iowa Rule of Civil Procedure 1.517(2)(*b*)(1)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 396 (Iowa 2005) (same). Cross further admitted during his professional statement at the hearing before the commission that he frequently failed to deposit advance expenses into the trust account.

Moreover, there is again clear evidence in the record to support these violations. With respect to eleven separate clients, the audit chronicled numerous instances in which Cross either failed to deposit

_____

We recently revoked an attorney's license for misappropriation of client funds for personal use despite the Board's failure to allege that specific misconduct in its complaint. *See id.* at 183 n.3, 186. In that case, "the Board's complaint did not expressly allege [the attorney] had misappropriated client funds." *Id.* at 183 n.3. It did, however, "clearly cover [the attorney's] handling and misuse of [a specific client's] $7500." *Id.* There, the complaint alleged the attorney failed to deposit the client's $7500 check in his trust account, had spent the money before the client asked for it back one week later, and violated rule 32:1.15. *Id.* In determining revocation was the appropriate sanction, we concluded "[the Board's] allegations were sufficient to put [the attorney] on notice that the Board believed [he] had not safeguarded his client's $7500 as required by rule 32:1.15." *Id.* We further recognized that the attorney in that case clearly "understood the centrality of the colorable claim question" because "[m]uch of his testimony . . . was devoted to trying to establish a colorable claim defense." *Id.*

In this case, unlike in *Kelsen*, Cross was never put on notice that he faced sanctions for misappropriating any client funds. While the Board has alleged a violation of rule 32:1.15, it has not alleged Cross has ever stolen client money or has been unable to return any funds to clients upon request. In fact, the record established that no clients are known to have filed a complaint against Cross. Further, the Board did not suggest that Cross misappropriated any client funds at the hearing before the commission. Finally, the commission has not suggested that revocation is the appropriate sanction in this case, and it expressly noted, "no client was cheated out of funds." Consequently, we will not consider whether Cross misappropriated client funds.

advance fees and expenses into the trust account, or withdrew fees and expenses before they were earned. While Cross now attempts to justify the deposit and withdrawal of these fees, claiming that in all instances the fees were earned, he has provided no documentation supporting this claim. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 210 (Iowa 2014) ("While Baldwin now attempts to justify these fees, he has never accounted for them."). Further, the audit showed the following as of November 2009: eight client subaccounts had negative balances, totaling $11,736.80; on four separate occasions in 2010, Cross overdrew the trust account; and after Cross opened the MJC account in 2010, he began regularly depositing client funds into that account, without regard to whether he should handle such funds through the trust account. These facts support the conclusion that Cross both failed to deposit advance legal fees and expenses into the trust account, and withdrew fees and expenses before they were earned. We find Cross violated rules 32:1.15(c) and (f) and rule 45.7(3).

Finally, we find Cross violated rules 45.2(3)(*a*) and 45.7(4) by failing to maintain proper financial records and notify numerous clients in writing and provide contemporaneous written accountings when withdrawing funds for fees and expenses from the trust account. There is no question Cross failed to maintain a check register or client ledgers, and did not regularly perform reconciliations. Cross told the auditor at the start of the audit he had failed to maintain client ledgers or perform reconciliations since 2009. He was also unable to provide the auditor with a check register. The commission deemed these facts as established due to Cross's failure to respond to the Board's document requests and interrogatories. Cross again admitted these deficiencies in his substituted and amended answer. We find Cross violated rule 45.2(3)(*a*).

Cross also systematically failed to notify clients in writing and provide contemporaneous written accountings when withdrawing client funds for expenses and fees from the trust account. The record established that during the audit the auditor was unable to uncover any evidence that Cross provided clients with contemporaneous written notifications and accountings of withdrawals from the trust account, with the exception of several real estate closings and probate matters. Cross admitted these deficiencies in his substituted and amended answer. We find Cross violated rule 45.7(4).

2. *Dishonesty.* Rule 32:8.4(c) provides, "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). To establish a rule 32:8.4(c) violation the Board must show "the attorney acted with some level of scienter greater than negligence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 421 (Iowa 2012).

Here, we find Cross violated rule 32:8.4(c). The record established that for each of the years 2009 through 2012, Cross submitted a client security questionnaire certifying that for the preceding calendar year he complied with all rules and accounting practices required of Iowa lawyers in the handling of client funds and trust accounts. We find that Cross intended these statements to mislead the Client Security Commission. In fact, Cross has failed to maintain client ledgers, maintain a check register, and perform reconciliations since 2009. The audit also established, contrary to Cross's certifications on his client security questionnaires, that he repeatedly failed to keep all client funds and retainers in an account separate from his own personal funds and that the trust account was overdrawn on four separate occasions in 2010.

*Ricklefs*, 844 N.W.2d at 698–99 (finding rule 32:8.4(c) violation when attorney falsely certified that he kept all client funds in a separate account from his personal funds, performed monthly reconciliations, and preserved client fund records for six years, but it was apparent he failed to "keep client ledgers, retain copies of bank statements, or perform monthly reconciliations" and he "later admitted he did not keep a check register . . . and . . . regularly kept personal funds in [the] account"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 656–57 (Iowa 2013) (finding rule 32:8.4(c) violation when attorney falsely certified that all retainers had been deposited into the trust account); *Kersenbrock*, 821 N.W.2d at 421 (finding rule 32:8.4(c) violation when attorney falsely certified she kept client funds separate from her own and performed monthly reconciliations, but the record showed she could not have reconciled the accounts because of the inadequacy of her records). We find Cross violated rule 32:8.4(c).

**B. Tax Matters.** The Board also alleges Cross violated Iowa Rules of Professional Conduct 32:8.4(b), (c), and (d) as a result of his failure to file employee-payroll-withholding-tax declarations and pay these taxes for years 2009 through 2011 and his failure to file state and federal income tax returns for tax years 2009 through 2011. Additionally, the Board alleges Cross violated Iowa Rule of Professional Conduct 32:8.1(b) for his failure to supply the Board with requested documentation regarding these alleged tax violations. We address these alleged rule violations together because they all apply to the handling of his tax matters.

1. *Payroll tax and income tax violations.* Rule 32:8.4(b) prohibits the commission of "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa

R. Prof'l Conduct 32:8.4(b). A lawyer need not be charged or convicted of a crime in order to be found in violation of this rule. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 299 (Iowa 2010).

As discussed above, rule 32:8.4(c) prohibits an attorney from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). "[A] lawyer makes a misrepresentation in violation of our ethical rules when his income exceeds the sums requiring the filing of a tax return and he fails to file a return." *Lustgraaf*, 792 N.W.2d at 299. However, as we have previously explained, "In the cases in which we have found the existence of a misrepresentation, the respondent had willfully failed to file returns, had committed a fraudulent practice, or had made a false statement." *Id.* at 300 (collecting cases). This is consistent with the general rule that " 'misrepresentation requires intent to deceive to support an ethical violation.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sobel*, 779 N.W.2d 782, 787 (Iowa 2010)).

Rule 32:8.4(d) prohibits an attorney from engaging in "conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). "There is no typical form of conduct that prejudices the administration of justice." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 587 (Iowa 2011). Acts that we have generally considered prejudicial to the administration of justice have "hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 758 N.W.2d 227, 230 (Iowa 2008) (internal quotation marks omitted).

> Examples of conduct prejudicial to the administration of justice include paying an adverse expert witness for information regarding an opponent's case preparation,

demanding a release in a civil action as a condition of dismissing criminal charges, and knowingly making false or reckless charges against a judicial officer.

*Templeton*, 784 N.W.2d at 768. "The mere commission of a criminal act will not constitute a violation of rule 32:8.4(d) unless that conduct somehow impedes the operation of the justice system." *Lustgraaf*, 792 N.W.2d at 300.

Applying these rules to the facts of this case, we find Cross violated rule 32:8.4(b), but not rules 32:8.4(c) and (d). First, we find Cross violated rule 32:8.4(b) by failing to file employee-payroll-withholding-tax declarations and pay the required taxes for years 2009 through 2011 and by failing to timely file his state and federal income tax returns for years 2009 through 2011. Cross clearly failed to file quarterly withholding-tax declarations with respect to employee payroll taxes and failed to make appropriate deposits. He admitted these facts in his amended and substituted answer. He further admitted that he had failed to file state and federal income tax returns from 2009 through 2011 in violation of 26 U.S.C. § 6012 (2006). This conduct reflects adversely on his fitness as a lawyer. *See Lustgraaf*, 792 N.W.2d at 299; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 797 (Iowa 2010). We find Cross violated rule 32:8.4(b).

However, we do not find this same conduct violated rule 32:8.4(c). Here, the Board has not alleged or presented any evidence that Cross's improper tax practices were willful, done with an intent to defraud, or otherwise deceitful. Nor did the Board allege or present evidence that Cross made any false statements in connection with this conduct.[4]

---

[4]Again, with respect to Cross's alleged tax misconduct, the client security questionnaires in the record do not contain Cross's responses concerning whether he had filed his state and federal income taxes.

Thus, on this record, we cannot conclude Cross engaged in misrepresentation in connection with his tax practices. *See Lustgraaf*, 792 N.W.2d at 300 (finding no rule 32:8.4(c) violation when Board failed to allege or present any evidence that attorney's "failure to file the returns was willful, done with an intent to defraud, or otherwise deceitful," or that the attorney made any false statements in connection with asserted failures). Thus, the Board failed to prove Cross violated rule 32:8.4(c).

Similarly, we do not find this same conduct violated rule 32:8.4(d). Here, there is no evidence in the record that Cross's actions affected any particular court proceeding or any ancillary system supportive of any court proceeding. Cross's behavior, even if criminal, is not the sort of conduct that prejudices the administration of justice within the meaning of rule 32:8.4(d). *Id.* (finding no rule 32:8.4(d) violation when attorney failed to file tax returns and there was no showing the failure affected any court proceeding or an ancillary system supportive of any court proceeding). Thus, the Board failed to prove Cross violated rule 32:8.4(d).

2. *Failure to respond to the disciplinary authority.* Rule 32:8.1(b) provides that a lawyer may not "knowingly fail to respond to a lawful demand for information from . . . [a] disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(b). "Knowingly" is defined as "actual knowledge of the fact in question" and "may be inferred from circumstances." *Id.* r. 32:1.0(f); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 534 (Iowa 2011).

Here, we find Cross violated rule 32:8.1(b). On September 25, 2013, the Board requested that Cross provide it with information concerning his employee payroll taxes and his income tax filings. On

October 24, Cross responded to the Board, indicating he was aware of the request but that he needed more time to formulate a response. Cross never supplied the Board with the requested information. We find Cross knowingly failed to respond to a lawful demand for information from a disciplinary authority in violation of rule 32:8.1(b). *See Dunahoo*, 799 N.W.2d at 534 (finding rule 32:8.1(b) violation when attorney was aware of the Board's request and failed to comply).

**C. Practicing Under a Trade Name.** Rule 32:7.5(e) in relevant part provides:

> A lawyer in private practice shall not practice under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name, or a firm name containing names other than those of one or more of the lawyers in the firm.

Iowa R. Prof'l Conduct 32:7.5(e) (July 2009).[5]

A trade name (or tradename) is a "name, style, or symbol used to distinguish a company, partnership, or business (as opposed to a

---

[5]This rule prohibiting the use of trade names is no longer in force in Iowa. *Compare* Iowa R. Prof'l Conduct 32:7.5(e) (July 2009), *with* Iowa R. Prof'l Conduct 32:7.5(a). In 2012, we adopted a new version of rule 32:7.5. *See* Iowa Supreme Court Order, *In the Matter of Amendments to the Iowa Court Rules Governing Lawyer Advertising* (Aug. 29, 2012), *available at* http://www.iowacourts.gov /wfdata/frame5862-1235/File83.pdf. Effective January 1, 2013, the new rule provides, in relevant part:

> A trade name . . . may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of rule 32:7.1.

Iowa R. Prof'l Conduct 32:7.5(a).

> As the comment to the rule explains,

> A firm may be designated . . . by a trade name such as the "ABC Legal Clinic." . . . Use of trade names in law practice is acceptable so long as it is not misleading. . . . The use of such names to designate law firms has proven a useful means of identification.

*Id.* r. 32:7.5 cmt. 1.

product or service)." *Black's Law Dictionary* 1633 (9th ed. 1990).  As the comment to the rule explains,

> The use of a trade name or an assumed name could mislead laypersons concerning the identity, responsibility, and status of those practicing under a trade name or an assumed name; therefore, such a practice is not permitted by this rule.

Iowa R. Prof'l Conduct 32:7.5 cmt. 1 (July 2009).

Here, we do not find the Board presented sufficient evidence to prove Cross practiced under a trade name in violation of rule 32:7.5(e). It is undisputed that Cross incorporated MJC in 2009 and began depositing client funds into the MJC account in 2010.  However, the Board presented no evidence showing that Cross ever held himself out to the public or any clients as "practicing" under this name.  There is no evidence in the record that Cross ever used the name MJC in connection with his law practice.  The rule does not require that the Board make an affirmative showing that an assumed trade name is misleading to sustain a violation.  However, the rule still requires that the allegedly offending trade name actually be used as a trade name.  The stated purpose of the rule, which is to protect the public from being misled, requires that there be at least some nexus between the attorney's use of the allegedly offending name and the public.  Here, there is no such nexus.[6]

---

[6]We are unable to find a single case in which a court has found a violation of a comparable rule without some evidence an attorney held himself out to clients or the public under the allegedly offending trade name.  *See, e.g.*, *In re Loomis*, 905 N.E.2d 406, 407 (Ind. 2009) (finding violation of rule prohibiting use of trade names when name was used in "professional documents, communications, signage, telephone directory listings, numerous advertisements, and an internet website"); *In re Oldtowne Legal Clinic, P.A.*, 400 A.2d 1111, 1115 & n.4 (Md. 1979) (refusing to approve proposed trade name as in violation of rule prohibiting use of trade names when firm intended to use the name "so that . . . clients would not know that there was any connection between it" and another law office); *Cincinnati Bar Ass'n v. Kathman*, 748 N.E.2d 1091, 1094 (Ohio 2001) (finding violation of rule prohibiting use of trade names when name was used on letterhead); *Garcia v. Comm'n for Lawyer Discipline*, No. 03-05-00413-CV, 2007 WL 2141246, at *5–6 (Tex. Ct. App. July 26, 2007) (finding violation of rule

Consequently, we do not find Cross violated Iowa Rule of Professional Conduct 32:7.5(e) (July 2009).

### V. Consideration of Appropriate Sanction.

Having found the foregoing rule violations, we now consider the appropriate sanction. The commission recommended we suspend Cross's license for one year and require that Cross demonstrate he has satisfied all outstanding payroll and income tax liabilities due state and federal taxing authorities as a condition of reinstatement. We give respectful consideration to the commission's recommendation. *Ricklefs*, 844 N.W.2d at 699. However, the issue of appropriate sanction is exclusively within this court's authority. *Id.*

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 308 (Iowa 2009). As we have previously stated,

> In considering an appropriate sanction, this court considers all the facts and circumstances, including the nature of the violations, the attorney's fitness to practice law, deterrence, the protection of society, the need to uphold public confidence in the justice system, and the need to maintain the reputation of the bar.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 463 (Iowa 2014). "Where there are multiple violations of our disciplinary rules, enhanced sanctions may be imposed." *Iowa Supreme Ct. Bd. of*

---

prohibiting use of trade names when name was used on letters, letterhead, business cards, email address, and signage); *Rodgers v. Comm'n for Lawyer Discipline*, 151 S.W.3d 602, 611 (Tex. Ct. App. 2004) (finding violation of rule prohibiting use of trade names when attorney used name in telephone books, obtained a copyright on the name, and registered a service mark for a phone hotline associated with the name and received more than fifty percent of his business from the hotline).

*Prof'l Ethics & Conduct v. Alexander*, 574 N.W.2d 322, 327 (Iowa 1998). Further, we "consider mitigating and aggravating circumstances, including companion violations, repeated neglect, and the attorney's disciplinary history." *Conroy*, 845 N.W.2d at 66.

In this case, Cross violated a number of our ethical rules relating to the management of his trust account. He also made misrepresentations on his client security questionnaires. Finally, he engaged in numerous tax violations and knowingly failed to cooperate with the Board in supplying it with requested information related to his tax misconduct. We turn now to address the specific sanction warranted by Cross's conduct.

Sanctions for trust account and accounting violations span from "a public reprimand when the attorney, in an isolated instance, failed to deposit funds into his trust account because he believed the fees to be earned" to "suspensions of several months where the violations were compounded by severe neglect, misrepresentation, or failure to cooperate." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012) (collecting cases). In cases warranting more serious discipline, additional violations or aggravating circumstances were present. *See id.*

We draw guidance from the following attorney discipline cases involving trust account violations. In *Iowa Supreme Court Attorney Disciplinary Board v. Morris*, we suspended an attorney's license for six months. 847 N.W.2d 428, 437 (Iowa 2014). In *Morris*, the attorney's trust account mismanagement was "severe and . . . persisted over a long period of time even after the Client Security Commission intervened with an audit and provided information that should have facilitated compliance with the applicable rules." *Id.* at 436. We did not find the

attorney failed to deposit advance fees and expenses into the trust account or withdrew fees and expenses before they were earned. *Id.* at 434. However, the attorney in that case did engage in dishonesty by representing that he regularly reconciled his trust account on his client security questionnaire. *Id.* at 435. Further, several aggravating factors led us to conclude the attorney's misconduct warranted sanctions at the long end of the spectrum. *Id.* at 436–37. Specifically, we considered the pervasiveness of the trust account violations, the attorney's twenty-five years of experience, and the attorney's three prior suspensions. *Id.*

In *Ricklefs*, we suspended an attorney's license for three months. 844 N.W.2d at 702. The attorney in that case "improperly handled his trust account, commingled client funds with his own, failed to maintain proper records, and also knowingly misrepresented that he was engaged in appropriate trust account practices." *Id.* at 700. The Board had not alleged, and in turn we did not find, the attorney failed to deposit advance fees and expenses into the trust account or withdrew fees and expenses before they were earned. *See id.* at 697–98. We considered as aggravating factors the fact the attorney failed to cooperate with the Board in its investigation, had received two prior public reprimands, and failed to shore up his trust account deficiencies despite an earlier audit bringing the noncompliance to his attention. *Id.* at 700. We considered the fact that there were no indications any clients suffered harm and that the attorney took responsibility for his actions before the commission and admitted his violations as mitigating factors. *Id.*

In *Iowa Supreme Court Attorney Disciplinary Board v. Powell*, we suspended an attorney's license for three months. 830 N.W.2d 355, 360 (Iowa 2013). In that case, the attorney "basically ignored the rules and procedures for maintaining a trust account over a prolonged period of

time." *Id.* at 357. He deposited client funds into his operating account, frequently paid funds to himself when he needed money before the fees were actually earned, and failed to adequately manage the bookkeeping practices of the firm. *Id.* While no client funds were ultimately lost, there were "years of utter disregard . . . for the trust [account] rules and practices." *Id.* at 357, 359. Due to a $43,000 trust account shortage, we had previously temporarily suspended the attorney and appointed a trustee to take control of the trust account. *Id.* at 356. In crafting the proper discipline, we considered the prior seven-month interim suspension and the attorney's other prior unethical conduct. *Id.* at 359.

In *Parrish*, we considered a sixty-day suspension the appropriate sanction when an attorney "withdrew funds from his trust account before they were earned, failed to promptly notify his clients of the withdrawals, did not earn the amounts withdrawn, and did not return the remainder of funds upon request." 801 N.W.2d at 583. The attorney had previously received six private admonitions, all of which related to a "failure to provide an itemization of services provided," and at least two of which involved withdrawal of funds in excess of the fees earned. *Id.* at 589. We concluded the attorney's conduct over a period of ten years had "developed into a pattern of violating the Iowa Rules of Professional Conduct and the rules of this court relating to the administration of trust accounts." *Id.* We considered the attorney's refusal or inability to return client funds as an aggravating factor, but we considered as mitigating factors the attorney's taking responsibility for his actions, taking steps to correct the accounting issues, community involvement, and pro bono work. *Id.*

In *Kersenbrock*, we encountered a pattern of pervasive trust account violations. 821 N.W.2d at 422. We approved a thirty-day

suspension. *Id.* The attorney in that case failed to deposit client retainers into a trust account, kept inadequate trust account records, prematurely withdrew fees in a probate case, and misrepresented her trust account practices on her client security questionnaire. *Id.* at 419–21. We considered as mitigating factors that no clients were harmed, the attorney had no disciplinary history, and the attorney acknowledged the inadequacies in her accounting practices and had taken steps to correct the problems. *Id.* at 422. However, due to her systematic failure to maintain any records, we concluded a suspension was the appropriate sanction. *Id.*

In *Boles*, we found an attorney's "flagrant, multiyear disregard for the billing and accounting requirements of our profession" warranted a thirty-day suspension. 808 N.W.2d at 441, 443. The attorney in that case "withdrew unearned fees, delayed responding to client requests for accurate billings, and failed to promptly refund unearned fees." *Id.* at 441. The situation was compounded by neglect of a client matter. *Id.* We considered as an important mitigating factor evidence the attorney had "corrected his practices to avoid reoccurrence," and noted that the attorney had no trust account problems in the approximately four years leading up to his hearing. *Id.* at 442. Additional mitigating factors included the attorney's full cooperation with the Board's investigation, his extensive pro bono practice, and the fact that no clients were harmed, "apart from the delayed refunds." *Id.*

In *Sunleaf*, an attorney used his trust account as a repository for personal funds to avoid creditor claims against his personal assets. 588 N.W.2d at 126. The attorney also falsified responses on his client security questionnaire. *Id.* at 127. There was no evidence of misappropriation of client funds, and the misconduct was "an

aberration, wholly out of plumb with [his] many years of practice which . . . [had] been honorable." *Id.* We approved a public reprimand, while indicating the case was a close call between a reprimand and a suspension. *Id.* at 126–27.

We believe this case requires a stiffer sanction than we imposed in *Kersenbrock*, *Boles*, or *Sunleaf*. In *Kersenbrock*, *Boles*, and *Sunleaf*, many mitigating factors were present that are not present here. *See Kersenbrock*, 821 N.W.2d at 422; *Boles*, 808 N.W.2d at 442; *Sunleaf*, 588 N.W.2d at 127. *Morris*, *Ricklefs*, *Powell*, and *Parrish* are closer parallels. As in this case, each of the attorneys in those cases engaged in numerous trust account violations that persisted over a prolonged period. *See Morris*, 847 N.W.2d at 436; *Ricklefs*, 844 N.W.2d at 700; *Powell*, 830 N.W.2d at 357; *Parrish*, 801 N.W.2d at 589. Here, Cross mismanaged the trust account, commingled client funds with his own, failed to deposit unearned fees and expenses into the trust account, withdrew fees and expenses before they were earned, failed to maintain proper records, and failed to provide clients with contemporaneous written notifications and accountings of withdrawals from the trust account. These violations persisted for over four years. As the auditor aptly put it in the audit report, "Cross completely lost control and accountability for client funds deposited in his trust account" and "committed nearly every wrong possible in handling client funds and managing an attorney's trust account."

As in *Powell* and *Parrish*, Cross failed to deposit advance fees and expenses in the trust account and withdrew fees before they were earned. *See Powell*, 830 N.W.2d at 357–58; *Parrish*, 801 N.W.2d at 586–87. This also warrants the imposition of sanctions on the higher end of the spectrum. *See Ricklefs*, 844 N.W.2d at 702 (noting that the withdrawal

of funds before they are earned is "an arguably more serious matter than running personal funds through a trust account"). Additionally, as in *Morris* and *Ricklefs*, Cross engaged in dishonesty in his representations on his client security questionnaire. *See Morris,* 847 N.W.2d at 435; *Ricklefs*, 844 N.W.2d at 698–99, 702 (noting that trust account related misrepresentations "potentially justify a more severe sanction").

Additionally, here we also have a number of rule violations relating to payroll taxes and federal and state income taxes. As we recently explained with respect to tax-related misconduct,

> In prior reported disciplinary cases involving failure to file tax returns, we have imposed suspensions ranging from sixty days to three years. In our prior cases imposing a suspension for failing to file tax returns, the attorney engaged in a willful failure to file, a fraudulent practice, or other more serious misconduct involving issues of dishonesty.

*Lustgraaf*, 792 N.W.2d at 301 (citations omitted) (collecting cases).

We draw guidance from the following attorney discipline cases involving tax violations. In *Iowa Supreme Court Attorney Disciplinary Board v. Iverson,* we suspended an attorney's license for one year. 723 N.W.2d 806, 812 (Iowa 2006). There, the attorney had "pled guilty to the crimes of fraudulent practice in the second degree (a class 'D' felony) and fraudulent practice in the third degree (an aggravated misdemeanor) in connection with his failure to pay his taxes and file his returns." *Id.* at 809. The attorney in that case failed to file his federal or state income tax returns for a period of almost ten years and had a total outstanding tax liability of close to $400,000. *Id.* at 809–10. We found this conduct violated Iowa Code of Professional Responsibility DR 1–102(A)(3) prohibiting illegal conduct involving moral turpitude; DR 1–102(A)(4) prohibiting conduct involving dishonesty, fraud, deceit, or

misrepresentation; DR 1–102(A)(5) prohibiting conduct that is prejudicial to the administration of justice; and DR 1–102(A)(6) prohibiting conduct that adversely reflects on the fitness to practice law. *Id.* at 810. We considered as an aggravating factor the attorney's almost ten-year failure to file the required tax returns, which we characterized as "a pattern of conduct justifying an increased sanction." *Id.* We considered as mitigating factors that the attorney had no prior ethical violations, was well respected within the legal community, and was devoted to the profession. *Id.* at 811. The attorney in that case also fully cooperated with the Board and the commission in their investigations of the matter. *Id.*

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. O'Brien*, an attorney failed to file required Iowa income tax returns for a period of two years. 690 N.W.2d 57, 57 (Iowa 2004). The attorney's conduct resulted in a criminal conviction for fraudulent practices in the third degree, an aggravated misdemeanor. *Id.* We found the attorney violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A) and concluded that a six-month suspension was the appropriate sanction. *Id.* at 57, 59.

In *Lustgraaf*, we issued a public reprimand. 792 N.W.2d at 302. There, the attorney failed to file tax returns for a period of four years, despite having sufficient income to trigger the filing requirement. *Id.* at 298–99. We found the lawyer's conduct violated rule 32:8.4(b) prohibiting the "commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer." *Id.* at 299. However, the attorney had not pled guilty to or been convicted of any crimes in connection with his failure to file his tax returns, and the Board failed to otherwise show he had engaged in any

misrepresentations with respect to his tax misconduct. *Id.* at 299–300. As a result, we found the Board failed to show the attorney acted dishonestly in failing to file his tax returns, and instead found that the attorney's conduct only amounted to negligence. *Id.* at 300. Further, we did not find the attorney's conduct was prejudicial to the administration of justice. *Id.* In considering the appropriate sanction, we considered the attorney's less-culpable state of mind a significant distinguishing fact from our prior cases, which had imposed substantially harsher penalties for similar violations. *Id.* at 301. We also considered the attorney's good reputation in the legal community, pro bono work, and lack of a prior disciplinary record as mitigating factors. *Id.*

In this case, Cross engaged in numerous tax violations. He failed to file employee-payroll-withholding-tax declarations and pay the required taxes for a period of three years. He also failed to timely file state and federal income tax returns for a period of three years. These violations reflect adversely on Cross's fitness to practice law. Unlike in *Iverson* and *O'Brien*, Cross has not pled guilty to or been convicted of any crimes in connection with his failure to file these tax returns, and the Board has not shown that he made any false statements in connection with this conduct. *See Iverson*, 723 N.W.2d at 807; *O'Brien*, 690 N.W.2d at 57. Thus, as in *Lustgraaf*, his less-culpable state of mind is certainly one factor we consider in crafting the appropriate sanction. *See* 792 N.W.2d at 301. Notwithstanding, many of the mitigating factors that led us to conclude a less severe sanction was appropriate in *Lustgraaf* are not present here. *See id.* at 301–02. In addition, Cross knowingly failed to cooperate with the Board in supplying it with requested information related to his tax misconduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 381 (Iowa 2007) ("We expect and

demand attorneys to cooperate with disciplinary investigations."). Consequently, coupled with his trust account misconduct, we find that enhanced sanctions are warranted in this case. *See Alexander*, 574 N.W.2d at 327.

Finally, in crafting the proper punishment we must consider aggravating and mitigating factors. *Conroy*, 845 N.W.2d at 66. Here, several aggravating factors, and the absence of mitigating factors, counsel in favor of imposing a stiffer sanction. First, Cross's past disciplinary history could be considered an aggravating factor. *See Ricklefs*, 844 N.W.2d at 700 (considering, in disciplinary matter involving trust account violations, attorney's prior public reprimands for neglect and lack of diligence in representing a client as an aggravating factor). In 1981, we publicly reprimanded Cross for neglect of client matters in repeatedly failing to meet appellate deadlines. However, because of the age of this prior discipline, we do not consider this an aggravating factor. Second, the fact that there are multiple violations of our ethics rules is an aggravating factor. *See Alexander*, 574 N.W.2d at 327; *Parrish*, 801 N.W.2d at 588 (noting that the presence of multiple violations is an aggravating factor). Third, Cross's over forty years of practice experience is an aggravating factor. *See Morris*, 847 N.W.2d at 436 (considering attorney's over twenty-five years of experience an aggravating factor). Finally, Cross's failure to cooperate with the Board in its investigation is another aggravating factor we consider in crafting the appropriate sanction. *See Ricklefs*, 844 N.W.2d at 700 (considering failure to cooperate with Board as an aggravating factor).

As to mitigating factors, Cross presented no evidence of any mitigating factors. However, the record here does not suggest that any clients suffered harm. We consider this a mitigating factor. *See id.*

(considering lack of client harm as a mitigating factor); *Kersenbrock*, 821 N.W.2d at 422 (same). Additionally, Cross ultimately took responsibility for his actions before the commission and admitted his violations. This is also a mitigating factor. *Ricklefs*, 844 N.W.2d at 700 (considering attorney's taking responsibility for his actions as a mitigating factor); *Kersenbrock*, 821 N.W.2d at 422 (same).

The commission recommended we suspend Cross's license for one year. Having considered the particular circumstances in this case, and after our de novo review of the record, we agree with the commission that a one-year suspension is appropriate. Additionally, the record established that Cross currently has outstanding payroll and income tax liabilities. On this record, we are unable to ascertain the exact amount of this current tax liability. Accordingly, as a condition of any reinstatement, Cross shall satisfy this court that he has entered into a repayment plan with the appropriate taxing authorities and that he is current with his repayment plans at the time of any application for reinstatement.

## VI. Conclusion.

We suspend Cross's license to practice law with no possibility of reinstatement for one year from the date of the filing of this opinion. Upon application for reinstatement, Cross shall have the burden to show he has not practiced law during the period of suspension and that he meets the requirements of Iowa Court Rule 35.14. Cross must notify all clients pursuant to Iowa Court Rule 35.23.

Additionally, as a condition to any reinstatement, Cross shall satisfy this court that he has entered into a repayment plan with the appropriate taxing authorities and that he is current with his payment plans at the time of any application for reinstatement.

Costs are taxed to Cross pursuant to Iowa Court Rule 35.27.

**LICENSE SUSPENDED.**